IN THE UNITED STATES DISTRICT COURT

FILED
CLERKS OFFICE

2005 APR 19 P 3:06

U.S. DISTRICT COURT
DISTRICT OF MASS

VINCENT SCOTT, PRO SE, TRUSTEE FOR
THE VINCENT J SCOTT SPECIAL TRUST
AND FOR HIMSELF,

    PLAINTIFF,

V.                                                    CASE # 05-10838 GAO

Referred to mJ JGDan

NATIONAL INSTITUTES OF HEALTH (NIH) DIRECTORS SINCE 1979,
OFFICIALLY, UNITED STATES POSTAL SERVICE (USPS) DIRECTORS SINCE
2000, OFFICIALLY; JOHNS HOPKINS UNIVERSITY AND DAVID SIDRANSKY,
OFFICIALLY AND INDIVIDUALLY, THE DAVID SIDRANSKY GROUP OF
JOHNS HOPKINS MEDICAL RESEARCH SCIENTISTS;
XIAODONG WANG, OFFICIALLY AND INDIVIDUALLY,

    DEFENDANTS.

**NATURE OF THE ACTION**

THIS IS A CIVIL ACTION SEEKING DAMAGES IN EXCESS OF $100,000, JURY
TRIAL AND INJUNCTIVE RELIEF FOR RACIAL DISCRIMINATION,
COPYRIGHT INFRINGEMENT AND THEFT OF TRADE SECRETS, AMONG
OTHER THINGS.

**JURISDICTION AND VENUE**

THIS COURT HAS JURISDICTION OF THIS MATTER AND EXCLUSIVE
JURISDICTION OF THE COPYRIGHT CLAIMS. VENUE IS PROPER, SINCE THE
U.S. GOVERNMENT AGENCY IS DEFENDANT AND ALL DEFENDANTS DO
SUBSTANTIAL BUSINESS HERE, IN ILLINOIS AND IN CALIFORNIA AS WELL
AS MANY OTHER STATES AND WORLDWIDE (WWW). AS WELL, MANY OF
THE ACTS COMPLAINED OF OCCURRED HERE AND BETWEEN HERE AND
ELSEWHERE, CONFERRING PERSONAL JURISDICTION OVER ALL THE
DEFENDANTS.

FEDERAL RICO 18 USC (AND 242, 241) 1341, 1961-1964, 1343, 2314, 2315, 2319,
ELECTRONIC THEFT ACT, ECONOMIC ESPIONAGE ACT OF 1966; U. S.
COPYRIGHT LAWS, TITLE 17 SEC. 101 ET SEQ. AND SEC. SEC 506, AMONG

OTHERS; THE DISTRICT OF COLUMBIA CODE 36:401 FF.; CALIFORNIA CODE SEC. 980A-2,FF.AMONG OTHERS, INTER ALIA, THE FEDERAL INTERSTATE COMMERCE ACT, FEDERAL ANTI-MONOPOLY AND FAIR TRADE LAWS AND THE COMMON LAW. THE 1971 BIVENS DECISION OF THE U S SUPREME COURT AND THE FEDERAL TORT CLAIMS ACT ARE ALSO INVOKED. PLAINTIFF REQUESTS THAT THE COURT RULE ON ALL OTHER CLAIMS BEFORE DECIDING ANY CLAIMS UNDER THE FTCA. THESE CLAIMS ARE LAID AD CONTINUATUM PURSUANT TO THE ILLINOIS CODE AND BOTH FEDERAL, CALIFORNIA AND ILLINOIS STATUTES AND DECISIONS REGARDING CONSPIRACIES TO VIOLATE LAWS.

### THE PARTIES

JOHNS HOPKINS AND SCIENTISTS, BALTIMORE, MARYLAND; NIH, BETHESDA MD AND THE U S POSTAL SERVICE IN INDIANAPOLIS (U.S ATTORNEY); EMORY, DOUGLAS WALLACE, LOUIS SULLIVAN AND MOREHOUSE SCHOOL OF MEDICINE, ATLANTA, GEORGIA; SCIENCE MAGAZINE AND AAAS IN WASHINGTON, DC.;
NATURE AND MACMILLAN, NEW YORK CITY, NEW YORK. ALL ARE CORPORATIONS EXCEPT DEFENDANTS WALLACE, SULLIVAN AND THE INDIVIDUAL JOHNS HOPKINS RESEARCHERS. SEE ATTACHED SERVICE LIST.

### AVERMENTS

1. ON MARCH 8, 2002, PLAINTIFF MAILED HIS COMPLAINT TO THE U S DISTRICT COURT BY CERTIFIED U S MAIL FROM THE U S POSTAL SERVICE STATION SERVING ZIP 46220 (BACON STATION, INDIANAPOLIS IN). THOSE PUBLIC SERVANTS AND OTHERS INTENTIONALLY DELAYED THE DELIVERY OF THE COMPLAINT TO THE COURT FOR THE PURPOSE OF PREVENTING TIMELY FILING OF THE COMPLAINT IN AID OF THE CONSPIRACY COMPLAINED OF BELOW. IN MAY, 2002, PLAINTIFF MAILED ADDITIONAL FILINGS FROM ANOTHER U S POSTAL SERVICE SUBSTATION IN INDIANAPOLIS TO THE U S DISTRICT COURT.THOSE DOCUMENTS WERE NEVER DELIVERED. SUBSEQUENTLY DEFENDANTS AND THEIR CO-CONSPIRATORS HAVE DELAYED AND PREVENTED DELIVERY OF FILINGS BY PLAINTIFF TO THE COURT ON SEVERAL OCCASIONS, RECENTLY IN FEBRUARY, 2005, IN AN EFFORT TO UNLAWFULLY OBTAIN A DISMISSAL OF THE LAWSUIT AGAINST WHICH THEY HAVE NO CREDIBLE DEFENSE.. OTHER COCONSPIRATORS HAVE STEADFASTLY DEFIED THE LAW AND THE CONSTITUTION BY REFUSING TO SERVE CERTAIN DEFENDANTS IN THAT ACTION WITH SUMMONS AND COMPLAINT AS REQUIRED BY 28 USC 1915D IN A FEDERAL DISTRICT COURT LAWSUIT (SIDRANSKI AND HIS GROUP AND JOHNS HOPKINS UNIVERSITY) AND BY REFUSING TO ENTER PROPER DEFAULT AND DEFAULT JUDGEMENT ORDERS AGAINST OTHER DEFENDANTS (SULLIVAN AND MOREHOUSE SCHOOL OF MEDICINE, INC.)

2

AS REQUIRED BY LAW IN AN EFFORT TO SHIELD THOSE DEFENDANTS FROM THE LAW. THEY AND OTHERS HAVE ALSO FOR IMPROPER AND UNLAWFUL PURPOSES ARRANGED THE CHANGING OF JUDGES HEARING THE CASE. THOSE DEFENDANTS ARE CHARGED WITH OBSTRUCTION OF MAIL DELIVERY AND WITNESS TAMPERING AS WELL AS VIOLATION OF PLAINTIFF'S RIGHT TO A FULL AND FAIR HEARING, AMONG OTHER THINGS. ALL DEFENDANTS SOUGHT TO BENEFIT AND PROFIT FROM THE MISCONDUCT ALLEGED HERE TO THE DETRIMENT OF PLAINTIFF BY UNLAWFUL AND IMPROPER ARTIFICES AND MEANS IN CONSPIRACY AND COLLUSION VIOLATIONS OF 18 USC 241, 242 AND THE RICO STATUTES, AMONG OTHERS.

1A. I, PLAINTIFF, AM A BLACK MALE MEDICAL SCIENTIST. IN 1979, WHILE A STUDENT INTHE GRADUATE PROGRAM IN BASIC MEDICAL SCIENCES AT THE UNIVERISTY OF SOUTH ALABAMA COLLEGE OF MEDICINE, I WROTE AND SUBMITTED TO NATURE MAGAZINE, AMONG OTHER SCIENTIFIC WRITINGS, MY U. S. COPYRIGHT-PROTECTED SCIENTIFIC RESEARCH PAPER, "SPHEROID-CONTAINED ONCOGENIC OR TERATOGENIC TRANSMISSION HYPOTHESIS." (OR "S.C.O.T.T. HYPOTHESIS" OR "THE PAPER") WITH THE UNDERSTANDINGS OF CONFIDENTIALITY AND NON-DISCLOSURE ORDINARILY ASSUMED IN SUCH SUBMISSIONS. THE SCOTT HYPOTHES DESCRIBED A THEORY AND METHOD FOR EARLY DETERMINATION (SCREENING) AT VERY LOW COST OF SUCH DISEASES AS BREAST CANCER, VIRAL BRAIN DISEASES LIKE "MAD COW DISEASE" AND ALZHEIMER'S DISEASE AND OTHERS. THIS PAPER WAS OF OBVIOUS SCIENTIFIC, MEDICAL AND COMMERCIAL VALUE, LIKELY AMOUNTING TO MANY MILLIONS OF DOLLARS, AND BOTH ACADEMIC AND PUBLIC HONORS AND ACCOLADES.

2. NATURE MAGAZINE RECEIVED THE PAPER AND COMMUNICATED IT TO THE NATIONAL INSTITUTES OF HEALTH, WHO DISPATCHED ITS AGENT-EMPLOYEE TO DETERMINE THE AUTHORSHIP OF THE PAPER, USING THE WIRES, MAILS AND PERSONALLY CROSSING STATE LINES IN ORDER TO DO SO.

3. UPON DETERMINING THAT I, A BLACK MAN, WAS THE SOLE AUTHOR OF THE SCOTT HYPOTHESIS AND THAT NO PART OF THE PAPER OR ITS CONCLUSIONS MIGHT BE ATTRIBUTED TO A WHITE PERSON, NIH, AS IS ITS PRACTICE REGARDING BLACK SCIENTISTS, DETERMINED TO SUPPRESS THE PAPER, CONCEAL ITS WORTH AND TO OBSTRUCT ITS AUTHOR FROM BENEFITTING IN ANY WAY FROM HIS COPYRIGHT AND TRADE SECRETS.

4. IN 1982, I SUBMITTED THE SAME PAPER WITH ADDITIONAL RESEARCH NOTES TO SCIENCE MAGAZINE, WHO THEN CONTACTED NIH, WHICH

3

CONTACTED EMORY UNIVERSITY (EMORY) AND ARRANGED TO HAVE ME EXPELLED FROM THE M.D. AND PH. D. PROGRAMS IN WHICH I HAD BEEN PARTICIPATING AT MOREHOUSE SCHOOL OF MEDICINE (MOREHOUSE) AND ATLANTA UNIVERSITY, IN ATLANTA, WHICH OPERATED UNDER EMORY UNIVERSITY SCHOOL OF MEDICINE'S INFLUENCE AND CONTROL. MOREHOUSE SCHOOL OF MEDICINE AND ITS PRESIDENT, DEFENDANT SULLIVAN COOPERATED IN THIS SCHEME IN EXCHANGE FOR VARIOUS COMPENSATIONS, INTER ALIA, HIS CONTINUATION IN OFFICE AND THE CONTINUATION OF THE MOREHOUSE SCHOOL OF MEDICINE. DEFENDANTS EMORY AND MOREHOUSE SUBSEQUENTLY OBTAINED FRAUDULENT JUDGEMENTS IN CIVIL RIGHTS LAWSUITS I FILED AGAINST THEM BY HAVING THE LAWSUITS ASSIGNED TO A JUDGE WHO WAS A LONGTIME EMORY FACULTY MEMBER AND SCHOOL BOOSTER. DEFENDANTS ALSO DEFAMED AND SCANDALIZED ME AND PREVENTED ME FROM TRANSFERRING TO ANOTHER MEDICAL SCHOOL TO COMPLETE MY DEGREES.

5. NIH AGREED WITH EMORY THAT IN EXCHANGE FOR EMORY'S COOPERATION THAT NIH WOULD FUND RESERCH ON THE SCOTT HYPOTHESIS TO BE CONDUCTED AT EMORY. EMORY THEN HIRED DOUGLAS WALLACE TO CONDUCT THE RESEARCH AND RECEIVE THE FUNDING FROM NIH AND OTHER SOURCES, DEFRUADING ME AND THE GOVERNMENT AND OTHER FINANCIAL SUPPORTERS.

6. THIS SCHEME CONTINUES AND HAS NETTED EMORY UNIVERSITY MORE THAN $75 MILLION IN GRANTS WHILE DEPRIVING ME OF MY TRADE SECRET'S COMMERCIAL VALUE AND DOCTORAL DEGREES AND OTHER HONORS AND PROFESSIONAL CREDENTIALS.

7. ABOUT 1998, NIH DECIDED THAT THE CRITICAL ISSUE, WHETHER OR NOT THE SCOTT HYPOTHESIS WAS CORRECT SHOULD BE DETERMINED, AND ISSUED DIRECTIONS AND FUNDING TO DEFENDANTS SINDRANSKY AND HIS JOHNS HOPKINS RESEARCH GROUP, WHO ARE WHITE, TO MAKE THAT RESEARCH DETERMINATION AND TO SHARE THE CREDIT (MORE GRANTS). JOHNS HOPKINS RESEARCHERS TYPICALLY WORK AS AN ARM OF NIH. THAT GROUP DETERMINED THE CORRECTNESS OF THE SCOTT HYPOTHESIS AND, AS AGREED WITH NIH AND SCIENCE MAGAZINE, PUBLISHED ITS RESULT IN THE 3-17-99 ISSUE OF SCIENCE ON THE WEB AND IN HARDCOPY, CITING NIH AS RESEARCH SUPPORT.

SINDRANSKY PARTICIPATED IN THIS SCHEME BY ACCEPTING FUNDING FROM NIH AND COLLUDING WITH NIH TO CONCEAL THE TRUE AUTHORSHIP OF THE IDEAS UNDER INVESTIGATION AND BY CONDUCTING RESEARCH UPON CRITICAL ELEMENTS OF MY PAPER, PARTICULARLY THE NOVEL MITOCHONDRIALLY GENERATED DETECTIBLE FACTORS ALLOWING EARLY DETECTION OF CERTAIN CANCERS AND CELLULAR

4

ACTIVITY IN RELATION TO CANCER DEVELOPMENT VIA A PREVIOUSLY UNSUSPECTED AND UNKNOWN MITOCHONDRIAL MECHANISM UNIQUELY AND CRITICALLY PART OF THE SCOTT HYPOTHESIS. HE PUBLISHED THE PAPER IN 2000 AND SINCE AS HIS OWN WORK. HE DEPRIVED ME OF THE MONETARY BENEFITS OF MY TRADE SECRETS AND RENDERED MY POTENTIAL PATENT RIGHTS MEANINGLESS IN SO DOING. HE CONTINUES TO FALSELY REPRESENT HIMSELF AS THE ORIGINATOR OF THE IDEAS UPON WHICH THE WORK PUBLISHED IS BASED AND CONTINUES TO ACCUMULATE WEALTH AND RECOGNITION BY THESE ACTIONABLE MISREPRESENTATIONS.

8. AS REQUIRED BY PREVIOUS AGREEMENT WITH NIH, AT NO TIME DID ANY OF THE DEFENDANTS CONTACT ME REGARDING MY RESEARCH OR ACKNOWLEDGE MY WORKS, TRADE SECRETS OR COPYRIGHTS. THIS IS A THEFT, UNLAWFUL APPROPRIATION OF MY PROPERTY RIGHTS AND PROCEEDS DUE ME AND A CONTINUING CONSPIRACY TO VIOLATE THE LAWS NAMED ABOVE, AMONG OTHERS AND TO DISCRIMINATE AGAINST ME ON ACCOUNT OF MY RACE AND MY STATUS AS A BLACK MEDICAL SCIENTIST.

9. DEFENDANT XIADONG WANG PARTICIPATED IN THIS SCHEME BY ACCEPTING FUNDING FROM NIH AND COLLUDING WITH NIH TO CONCEAL THE TRUE AUTHORSHIP OF THE IDEAS UNDER INVESTIGATION AND BY CONDUCTING RESEARCH UPON CRITICAL ELEMENTS OF MY PAPER, PARTICULARLY THE NOVEL MITOCHONDRIAL CONTROL MECHANISM OF NUCLEAR GENOMIC AND CELLULAR ACTIVITY IN RELATION TO CANCER DEVELOPMENT VIA A PREVIOUSLY UNSUSPECTED AND UNKNOWN MITOCHONDRIAL FACTOR UNIQUELY AND CRITICALLY PART OF THE SCOTT HYPOTHESIS. WANG PUBLISHED THE PAPER IN 1998 AND SINCE AS HIS OWN WORK. HE DEPRIVED ME OF THE MONETARY BENEFITS OF MY TRADE SECRETS AND RENDERED MY POTENTIAL PATENT RIGHTS MEANINGLESS IN SO DOING. HE CONTINUES TO FALSELY REPRESENT HIMSELF AS THE ORIGINATOR OF THE IDEAS UPON WHICH THE WORK PUBLISHED IS BASED AND CONTINUES TO ACCUMULATE WEALTH AND RECOGNITION BY THESE ACTIONABLE MISREPRESENTATIONS.

10. I DEMAND RESITUTION, DISGORGEMENT AND THE RIGHT TO RECOVER ALL PROCEEDS DUE ME AS DETERMINED BY A SPECIAL MASTER, A FORENSIC ECONOMIST AND OTHER APPROPRIATE PERSONNEL, WHICH I ASK THE COURT TO APPOINT, COUNTING TRIPLE DAMAGES TWICE-- FOR BOTH RICO AND ANTITRUST VIOLATIONS.

11. BECAUSE I HAVE NO ADEQUATE REMEDY AT LAW, AND AM LIKELY TO CONTINUE SUFFERING IRREPARABLE HARM, I FURTHER ASK THAT THE

COURT PERMANENTLY ENJOIN THE DEFENDANTS AND ANY OTHERS WHO MAY BE INVOLVED FROM CONTINUING THIS UNLAWFUL AND IMPROPER CONSPIRACY.

13. PLEASE DIRECT THE EMORY AND JOHNS HOPKINS TO REPAY ALL FUNDS RECEIVED FROM THE GOVERNMENT AND ANY OTHER AGENCY AS REGARDS THIS MATTER.

14. PLEASE FASHION SUCH OTHER REMEDIES AS MAY BE DEEMED APPROPRIATE AND FITTING, INTER ALIA, DIRECTING THAT THE OFFICE OF CONTRACT COMPLIANCE AND THE OFFICE OF RESEARCH INTEGRITY INVESTIGATE THIS MATTER FOR FRAUD AND OTHER VIOLATIONS, SUSPENDING FEDERAL FUNDING TO JOHNS HOPKINS UNVERSITY, EMORY UNVERSITY AND MOREHOUSE SCHOOL OF MEDICINE.

15. I RESERVE THE RIGHT TO AMEND THIS COMPLAINT AS NECESSARY AND APPROPRIATE. PLAINTIFF WILL PROVIDE ADDITIONAL ADDRESSES AND OTHER INFORMATION AS REQUIRED BY THE COURT.

4/14/05
RESPECTFULLY SUMMITTED UNDER AFFIRMATION AND PENALTY OF PERJURY,

*[signature: Scott]*

VINCENT SCOTT, PRO SE, TRUSTEE FOR
THE VINCENT J SCOTT SPECIAL TRUST
AND FOR HIMSELF
5868 E 71ST ST #131
INDIANAPOLIS IN 46220

## SERVICE LIST

JOHNS HOPKINS UNIVERSITY
AND DR. DAVID SIDRANSKI AND RESEARCH GROUP OFFICIALLY
VIA KUMIKI GIBSON
GENERAL COUNSEL
113 GARLAND HALL
601 N CAROLINE ST
BALTIMORE MD 21218
TEL: 410-516-8128

NIH AND USPS
UNITED STATES ATTORNEY

XIAODONG WANG, OFFICIALLY AND INDIVIDUALLY
UT SOUTHWESTERN MEDICAL CENTER AT DALLAS
5323 HARRY HINES BLVD, DALLAS, TEXAS 75390-9038

7