UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
VINCENT SCOTT,                     )
                                   )
            Plaintiff,             )
                                   )
      v.                           )
                                   )
NATIONAL INSTITUTES OF HEALTH      )    C.A. No. 05-10838-GAO
(NIH) DIRECTORS SINCE 1979, et     )
al.,                               )
                                   )
            Defendants.            )
                                   )
```

## MEMORANDUM AND ORDER

For the reasons set forth below, this action will be dismissed in thirty-five (35) days from the date of this Order unless plaintiff shows good cause before that time as to why it should not be dismissed.

### BACKGROUND

On April 19, 2005, *pro se* plaintiff Vincent Scott ("plaintiff"), a resident of Indiana, filed a civil complaint and an application to proceed without prepayment of fees.[1]  The application to proceed without prepayment of fees has been granted on this date in a separate Order.

I.    Plaintiff's Present Action

The complaint is somewhat confused and vague.  In summary, plaintiff appears to allege that the National Institutes

_____

[1] The application to proceed without prepayment of fees will be addressed in a separate Order.

of Health and a number of other institutions and individuals[2] have engaged in a vast conspiracy to deprive him of the benefits of his scientific work over the course of the past 26 years. Specifically, plaintiff, who states he is "a black male medical scientist," alleges that he authored an article in 1979 in which he set forth the "Scott Hypothesis," "a theory and method for early determination ... of such diseases as breast cancer, viral brain diseases like 'mad cow disease' and Alzheimer's disease and others." Complaint ¶ 1A. Plaintiff claims that he submitted his article to Nature Magazine, and that the magazine, in turn, transmitted the article to the National Institutes of Health. Complaint ¶ 1A. Plaintiff further claims that, in the years since 1979, various scientists, science magazines, and universities conspired to conceal the authorship of the "Scott Hypothesis" in order to divert research funding from plaintiff and to prevent him from otherwise benefitting from his work. See Complaint, generally.

Plaintiff also vaguely suggests that, in connection with and furtherance of the other defendants' conspiracy against

---

[2] In the caption of his complaint, plaintiff identifies the following defendants: "National Institutes of Health (NIH) Directors since 1979," the "United States Postal Service (USPS) Directors since 2000," "John Hopkins University and David Sidransky," "the David Sidranski Group of Johns Hopkins Medical Research Scientists," and Xiaodong Wang. Complaint at p. 1. In the body of his complaint, plaintiff also identifies the following defendants: Emory University, David Wallace, Louis Sullivan (President of the Morehouse School of Medicine), the Morehouse School of Medicine, Science Magazine, AAAS (American Association for the Advancement of Science), and "Nature [Magazine] and MacMillan [Publishers Limited]." Id. at 2.

plaintiff, the "United States Postal Service (USPS) Directors
Since 2000, Officially" intentionally delayed and tampered with
documents mailed by plaintiff to various courts for filing from
2002 to 2005.  Complaint ¶ 1 and caption.

Plaintiff asserts that he is entitled to relief for "racial
discrimination, copyright infringement and theft of trade
secrets, among other things."  Complaint p. 1.  Plaintiff seeks
"resitution [sic], disgorgement and the right to recover all
proceeds due me as determined by a special master, a forensic
economist ... counting triple damages twice-for both RICO and
antitrust violations."[3]  Complaint ¶ 10.

II.  Plaintiff's Prior Litigation

A.  Allegations In The First Action

According to court records, plaintiff has already
unsuccessfully litigated, in at least one other court, this exact
same claim, i.e., that he is the victim of a vast conspiracy to
misappropriate the "Scott Hypothesis."  On May 3, 2002, plaintiff
filed a complaint in the U.S. District Court for the District of
Columbia (Scott v. N.I.H. C.A. No. 02-0854 (HHK)) (herein, the
"First Action"), containing essentially the same allegations

---

[3] Plaintiff appears to claims that venue is proper in this court because
"the U.S. Government Agency is defendant [sic] and all defendants do
substantial business here, in Illinois and in California as well as many other
states and worldwide (WWW)."  Id.  Although plaintiff refers to "here" in his
allegations of venue, the complaint does not contain a single reference to
Massachusetts.

against the same defendants[4], and seeking the same relief[5] he
seeks in the present action.[6]

More specifically, in the First Action, plaintiff alleged
that the defendants had conspired to conceal the authorship of
Scott's 1979 paper on the "Scott Hypothesis," to divert research
money, and to prevent plaintiff from otherwise benefitting from
his work.  See Scott v. National Institutes of Health, et al.,
C.A. No. 02-0854 (HHK)(D.D.C.), Memorandum Opinion dated October
28, 2003 (Docket Entry No. 51), pp. 1-2 (Kennedy, J.) (herein,
"First DC Order").  A side-by-side comparison of the two
complaints reveals that the vast majority of the present
complaint mirrors the complaint in the First Action.  Indeed,

_____

[4] In the First Action, plaintiff named the following defendants:  The
National Institutes of Health, John Hopkins University, a group of John
Hopkins Medical Research Scientists, Emory University, Douglas Wallace,
Science Magazine, AAAS, Nature Magazine, Macmillan Publishing Company, the
Morehouse School of Medicine, Morehouse School of Medicine's President Louis
Sullivan, and 25 John Does.

[5] In the First Action, as in the present action, Scott sought
"resitution [sic], disgorgement and the right to recover all proceeds due
[him] as determined by a special master, a forensic economist ... counting
triple damages twice–for both RICO and antitrust violations."  See First DC
Order, p. 2 (first alteration in original) (quoting complaint).

[6] The court also notes that plaintiff has also filed actions against
some of these same defendants in the Northern District of Georgia.  See Scott
v. Morehouse School of Medicine, et al., C.A. No. 89-02395-RHH (N.D. Ga.);
Scott v. Sullivan, C.A. No. 90-01516-RHH (N.D. Ga.).  Judgment was entered in
favor of the defendants in both of these cases.  See docket entries 110 and 9
in C.A. No. 89-02395 and C.A. No. 90-01516, respectively.  Scott brought yet
another action against Morehouse School of Medicine, Emory University, Louis
Sullivan, and other defendants in Scott v. Morehouse School of Medicine, et
al., C.A. No. 96-00102-PER (S.D. Ill.).  The court also entered judgment in
favor of the defendants in that action.  See docket entry 44.  The substance
of Scott's claims in these three lawsuits is not apparent from the docket
entries, and copies of the pleadings and orders in these cases are not readily
available.

paragraphs 1A - 8, and 10-15 of the present complaint are essentially identical to paragraphs 1-8[7] and 10-15 of the complaint in the First Action.

There are only two notable difference between the two complaints. The first is found at paragraph 9 of the present complaint, in which plaintiff elaborates on the involvement in the conspiracy of one individual defendant, Xiadong Wang, who was not mentioned by name in the First Action.[8] The second is the inclusion of additional vague allegations, referenced above, relating to the purported involvement of postal officials in the conspiracy. See Complaint ¶ 1 and caption.

B.    Dismissal Of The First Action

As an initial matter, the federal district court for the District of Columbia "construe[d] plaintiff's complaint as an effort to set forth a civil cause of action under the Racketeer Influences and Corrupt Organizations Act" and determined that the First Complaint did not set forth any other cognizable cause of action.[9] See First DC Order, p 3. On September 8, 2004, the

---

[7] The court notes that in the present complaint, paragraph 7 includes a second part which is not found in the First Complaint. The second part of paragraph 7 in the present complaint does not appear to add to the substance of plaintiff's allegations, but rather, merely elaborates upon the allegations contained in the first part of paragraph 7.

[8] The court notes that this defendant may have been included as one of the 25 "John Does" listed in the first complaint.

[9] Although plaintiff had alleged that the defendants had "defrauded him and the federal government, discriminated against him, defamed him, and otherwise caused him economic and professional injury," the court was "unable to discern any other possible cause of action [other than a RICO claim] in

court granted defendants' 12(b)(6) motion and dismissed plaintiff's action in its entirety on the grounds of sovereign immunity and failure "to state a RICO claim against any of the defendants." See Scott v. National Institutes of Health, et al., C.A. No. 02-0854 (HHK)(D.D.C.), Memorandum Opinion dated September 8, 2004 (Docket Entry No. 71), p. 4 (Kennedy, J.) (herein, "Second DC Order").

The Court of Appeals for the District of Columbia Circuit subsequently dismissed plaintiff's appeal of the Second DC Order. As grounds for the dismissal, the court of appeals stated that plaintiff had failed to comply with the terms of that court's 1995 enjoining him from filing civil appeals until he paid $250.00 imposed as a sanction for previously filing a frivolous appeal. See Order at 1, Scott v. National Institutes of Health, et al., No. 04-5345 (D.C. Cir. June 17, 2005) (per curiam).

**ANALYSIS**

I.    The Court's Authority to Screen the Action

Summons have not yet issued in this case because the complaint was accompanied by an application to proceed without prepayment of the filing fee. In such cases, the court is required to review the complaint in order to determine whether it satisfies the requirements of the 28 U.S.C. § 1915 (governing

Scott's prolix complaint and subsequent papers." See First DC Order at 3 n.3.

applications to proceed *in forma pauperis*).  Section 1915(e)(2)

authorizes federal courts to dismiss actions in which a plaintiff

seeks to proceed without prepayment of fees if the action lacks

an arguable basis either in law or in fact, <u>Neitzke v. Williams</u>,

490 U.S. 319, 325 (1989) (interpreting former 28 U.S.C.

§ 1915(d)), or if the action fails to state a claim on which

relief may be granted, or seeks monetary relief against a

defendant who is immune from such relief.  <u>See</u> 28 U.S.C.

§ 1915A(b).

III. Claims Regarding The Alleged Misappropriation Of The "Scott
     Hypothesis" Are Barred by the Doctrine of Res Judicata

     In this action, plaintiff's claims relating to the alleged

misappropriation of the "Scott Hypothesis" lack an arguable basis

in law or fact because such claims are barred by the application

of *res judicata.*[10]  Under the doctrine of *res judicata*, a final

judgment on the merits of an action precludes the parties or

their privies from relitigating issues that were or could have

been raised in a previous action.  <u>Havercombe v. Dept. of

Education</u>, 250 F.3d 1, 3 (1st Cir. 2001)(citing <u>Allen v. McCurry</u>,

449 U.S. 90, 94 (1980)).  *Res judicata* requires: (1) a final

judgment on the merits in an earlier action; (2) an identity of

the causes of action in the earlier and later suits; and (3) an

---

[10] A court may take judicial notice of other relevant court proceedings.
<u>See</u> <u>Kowalski v. Gagne</u>, 914 F.2d 299, 305-306 (1st Cir. 1990).  <u>See</u> <u>In Re
Medomak Canning</u>, 922 F.2d 895, 904-905 (1st Cir. 1991) (court on notice that
an issue has previously been decided may dismiss an action *sua sponte*,
consistent with the res judicata policy of avoiding judicial waste).

identity of the parties or privies in the two suits.  Kale v.
Combined Ins. Co. of Am., 924 F.2d 1161, 1165 (1st Cir. 1991).

     All three *res judicata* factors are met in this case.  First,
the decision of the U.S. District Court for the District of
Columbia dismissing plaintiff's claims in the First Action,
constitutes a final judgment on the merits of an earlier action.
See Andrews-Clarke v. Lucent Techs., Inc., 157 F. Supp. 2d 93, 99
(D. Mass. 2001) (dismissal for failure to state a claim is a
judgment on the merits, is presumed to be with prejudice, and has
a claim preclusive effect).

     Second, the causes of action in the First Action and the
present action are identical because they involve the same basic
factual transaction or occurrence, i.e., the alleged
misappropriation of the "Scott Hypothesis" by a conspiracy of
institutions and individuals.  See Manego v. Orleans Board of
Trade, 773 F.2d 1, 5 (1st Cir. 1985) (adopting a "transactional"
definition of the underlying claim or cause of action).  Indeed,
as noted above, the factual allegations in these two actions are
almost identical.

     Third, to the extent that defendants named in the present
complaint were named or referenced in the First Action, an
identity of parties clearly exists.  Plaintiff, therefore, cannot
raise the same claims against these parties in this action.  See
Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1165 (1st Cir.

8

1991).

Moreover, to the extent that defendant Xiadong Wang, the United States Postal Service, or any other "Scott Hypothesis" related-defendant in the present action was not specifically named in the First Action, claims against these newly-specified defendant(s) are also barred by *res judicata*. A party who was not a defendant in a previous action may assert *res judicata* in a second action brought by the same plaintiff arising out of the same factual transaction if the new defendant has a "close and significant relationship" with the original defendants, and the plaintiff had a "full and fair opportunity" to bring his claim against the new defendant in the prior action. See Andrews-Clarke v. Lucent Techs., Inc., 157 F. Supp. 2d 93, 99 (D. Mass. 2001)(citing In Re El San Juan Hotel Corp., 841 F. 2d 6, 10 (1st Cir. 1988)(discussing federal doctrine of non-mutual claim preclusion)).

In this case, plaintiff alleges that the previously unnamed defendant Wang "participated in" the conspiracy by promoting himself as the originator of certain elements of the "Scott Hypothesis," and "colluded with" other the defendants by accepting funding from with respect thereto. Complaint ¶ 9. He also alleges that the postal service officials participated with the other defendants in the conspiracy by tampering with his mail. Complaint ¶ 1. Based on these allegations, the court

9

finds that to the extent that plaintiff alleges that any new
defendants, including Wang and the postal service officials,
conspired with the original defendants with respect to the "Scott
Hypothesis," the new defendants are sufficiently identical to the
original defendants because a "close and significant
relationship" with the original defendants existed at the time
plaintiff filed the First Action.  Plaintiff therefore had a
"full and fair opportunity" to raise any claims he may have had
related to the "Scott Hypothesis" against these defendants in the
First Action.  His failure to do so bars his claims in the
present action.

      As a result of the foregoing, it is clear that principles of
*res judicata* bar all of plaintiff's claims in this action against
any and all defendants relating to the alleged misappropriation
of the "Scott Hypothesis."  Plaintiff's complaint as to all such
claims are subject to dismissal under § 1915 as lacking any
arguable basis in law or fact.

IV.  <u>Claims Against U.S. Postal Service Officials</u>

      To the extent, if any, that plaintiff is attempting in this
action to assert new claims against postal service directors in
their official capacities (unrelated to the "Scott Hypothesis"
conspiracy and/or arising subsequent to the final decision in the
First Action), such claims must also be dismissed as lacking an
arguable basis in law or fact.  Plaintiff has entirely failed to

articulate any identifiable separate cause of action against the postal service officials.

## CONCLUSION

ACCORDINGLY, for the reasons set forth above, this action will be dismissed in 35 (thirty-five) days pursuant to 28 U.S.C. Section 1915(e)(2), unless plaintiff shows good cause before that time as to why it should not be dismissed.

SO ORDERED.

Dated at Boston, Massachusetts, this 7th day of February, 2006.

                              s/ George A. O'Toole, Jr.
                         UNITED STATES DISTRICT JUDGE